UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JAMES SHARKEY, <br><br> Plaintiff, <br><br> v. <br><br> NAPHCARE, INC., *et al.*, <br><br> Defendants. | Case No. 2:18-cv-0025-KJD-BNW <br><br> **ORDER** |

There are several motions pending before the Court, all of which arise out of an alleged assault by correctional officers on Plaintiff James Sharkey while he was a pre-trial detainee at the Clark County Detention Center. The Court has twice screened Sharkey's proposed complaints and determined that he has objectively pleaded colorable claims (ECF Nos. 9, 17). Since then, there has been a flurry of filings. First, Sharkey moved to "assert jurisdiction" (ECF No. 20), where he effectively seeks to amend his complaint to add defendants. Next, Defendant NaphCare, Inc. moved to dismiss (ECF No. 23), to which Sharkey responded (ECF No. 29), and NaphCare replied (ECF No. 31). Before the Court could rule on the motion to dismiss, Sharkey moved for summary judgment (ECF No. 36). The Court stayed the briefing on that motion until it could decide NaphCare's pending motion to dismiss. Since then, Sharkey has moved to compel NaphCare to consolidate its motion to dismiss into its future opposition to his motion for summary judgment (ECF No. 42) and has filed two more motions to amend his complaint (ECF No. 51 and ECF No. 43, which the Court construes as a motion to amend). The Court will resolve each motion below.

**I.   Background**

Sharkey alleges a litany of constitutional deprivations during his time as a pre-trial detainee at the Clark County Detention Center (CCDC). The majority of Sharkey's claims arise

from two alleged assaults that Sharkey suffered at the hands of corrections officers and CCDC's response to those assaults.[1] Sharkey claims that in the evening of June 13, 2017, Officer Jesse Neville instructed Sharkey and the other inmates in his cellblock to "lock down for the rest of the night" and go to bed. Sharkey jokingly asked Neville to "tell [them] a bedtime story." Second Am. Compl. 4, ECF No. 18. In response, Neville viciously attacked Sharkey in his cell, choking him against the wall and repeatedly kicking and punching Sharkey after he lost consciousness. Before Neville left the cell, he told Sharkey that he could "make him disappear" and that he would label Sharkey a "snitch" if he reported the beating. Id. at 4–4A.

Sharkey claims that other officers either failed to protect him or even retaliated against him after the assault. Specifically, Sharkey claims that officers in the cafeteria withheld his meals after the assault. And worse, Sharkey alleges that five days after the first assault, he had a disagreement with Special Enforcement Officer Kelsey over Sharkey's phone use that resulted in a second attack. Id. at 5. Apparently, Kelsey cornered Sharkey in his cell and repeatedly pushed him up against the wall while screaming, "stop hitting yourself!" Id. at 5A. That assault stopped when a sergeant pulled Kelsey away from Sharkey.

The alleged assaults left Sharkey bruised, bloodied, and in need of medical care. Clark County contracts with NaphCare, Inc. to provide medical care to inmates housed at CCDC. Sharkey submitted a "kite" request for medical attention at some point before June 18, 2017. Id. at 6D. He reported finding blood in his urine, possible broken ribs, bruises and cuts to his face and body, and trauma to his neck and back. Id. at 6D. NaphCare nurses examined Sharkey regularly over the next two weeks. Id. at 6E. On June 18, 2017, a NaphCare nurse started to collect a urine sample from Sharkey, but the nurse allegedly refused to accept unless it "appeared normal." Id. at 6D–6E. Sharkey submitted another "kite" request to complain that the nurse had not picked up his sample within three hours. CCDC Med. Request 32, ECF No. 18. The nurses responded that there was no set time frame within which a urine sample must be retrieved. Sharkey's complaint is unclear whether he received the urinalysis results. However, Sharkey did

---

[1] Sharkey also brings a First Amendment claim to exercise his religion while in CCDC. However, the nature of the pending motions does not require the Court to address that claim now.

not submit a grievance over the nurses' handling of his urine sample.

Despite Neville's alleged threats and the other officers' retaliation, Sharkey reported his assault to an Officer Lewis. In response, multiple prison officials "rushed in [to] photograph" Sharkey's injuries. Id. at 4A. The internal affairs office opened an investigation. Id. at 4B. They questioned Sharkey about the attack, but he refused to answer their questions because they "did not lay out a foundation of why it would be safe to speak to them." Id. at 4C. Sharkey also reported the assaults to the Citizens Review Board, which communicates with internal affairs department to correct CCDC practices. Id. at 4B. The results of that investigation are unclear from the complaint.

Sharkey filed this case in early 2018. His first complaint alleged eleven total causes of action against nine different defendants. The Court screened the complaint and dismissed several of the claims and defendants. ECF No. 9. Sharkey pared his first amended complaint to five total causes of action. First, Sharkey alleged a Fourteenth Amendment violation against Officer Neville for excessive force, failure to protect, and failure to investigate. In its screening order, the Court determined that Sharkey's excessive force and failure to protect claims were sufficiently pleaded, but it dismissed his failure to investigate claim because Sharkey cannot dictate the way CCDC investigates prisoner complaints. Screening Order 6, ECF No. 17. Second, Sharkey alleged a similar claim against Officer Kelsey for his alleged assault. The Court's screening order allowed that claim to proceed. Id. at 6–7. Third, Sharkey alleged a First Amendment free exercise claim arising out of his access to religious services while at CCDC. The Court allowed that claim to proceed. Id. at 7. Fourth, Sharkey alleged a conditions-of-confinement claim against an Officer Okolovich and Sheriff Lombardo for their part in cafeteria officials withholding Sharkey's meals. The Court also allowed that claim to proceed. Id. at 11–12. Finally, Sharkey alleged a Fourteenth Amendment deliberate indifference claim against NaphCare, Inc. and Doe doctors and nurses for their medical response to his injuries. The Court also allowed that claim to proceed. Id. at 13.

Defendant-officers Mariah Mendoza, Blake Okolovich, Jesse Neville, Kenneth Kelsey, and Sheriff Joseph Lombardo ("county defendants") have answered Sharkey's complaint, and

NaphCare has moved to dismiss. Meanwhile, Sharkey has filed several motions including a motion for summary judgment to which the county defendants responded. The Court now turns to those pending motions.

## II. Legal Standard

The constitution guarantees indigent parties "meaningful access to the courts." Bounds v. Smith, 430 U.S. 817, 821–23 (1977). The Court understands that their pleadings may lack the refinement of retained-counsel's filings. As a result, the Court holds these documents to a "less stringent standard[] than formal pleadings drafted by lawyers." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Indeed, the Court construes pro se pleadings liberally and in that party's favor. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). That leeway is limited to the allegations in the pleadings themselves. It does not exempt a pro se parties from following the rules of procedure. Ghazali v. Moran, 46 F.3d 52, 53 (9th Cir. 1995) (pro se parties are still "bound by the rules of procedure"). Accordingly, the Court will only dismiss a pro se complaint if it is clear that "the plaintiff can prove no set of facts" that would entitle him to relief. Estelle, 429 U.S. at 106.

## III. Analysis

There are seven motions pending in this case, but only two are potentially dispositive motions: NaphCare's motion to dismiss (ECF No. 23) and Sharkey's motion for summary judgment (ECF No. 36). The Court need not resolve the pending motions in any particular order. Dietz v. Bouldin, 136 S.Ct. 1885, 1892 (2016) (the Court has the inherent authority to manage its docket for the efficient resolution of its cases). Given that NaphCare's motion to dismiss and Sharkey's motion for summary judgment are potentially dispositive, the Court elects to evaluate them first. Resolving those motions first may eliminate unsupported claims, dismiss parties, and provide clarity to the remaining motions on the docket.

### A. NaphCare's Motion to Dismiss

Sharkey brings one Fourteenth Amendment claim against NaphCare and several Doe doctors and nurses. He claims that NaphCare, Inc. and its individual employees were deliberately indifferent to his serious medical needs following the June 13 assault. Importantly, Sharkey does not allege that NaphCare failed to treat him. He argues that NaphCare's treatment was not

reasonable considering the seriousness of his injuries. NaphCare moves to dismiss for two reasons. First, it argues that Sharkey did not allege that NaphCare's failure to treat Sharkey was due to any policy, custom, or practice as required by <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658 (1978). Alternatively, NaphCare argues that Sharkey failed to exhaust his administrative remedies prior to filing this suit. If true, either argument justifies dismissal.

The Court applies a two-step approach when considering a motion to dismiss. First, it accepts the plaintiff's well-pleaded factual allegations as true. Legal conclusions or mere recitals of the elements of a cause of action, on the other hand, do not receive the assumption of truth. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). Then, the Court considers whether the remaining factual allegations in the complaint allege a plausible claim for relief. <u>Id.</u> at 679. A claim is plausible if its pleaded facts allow the Court to draw a reasonable inference that the defendant is liable for the alleged misconduct. <u>Id.</u> at 678. Any claim that does not meet that standard must be dismissed.

Here, Sharkey has not adequately pleaded a Fourteenth Amendment violation against NaphCare or its employees. The Fourteenth Amendment guarantees pretrial detainees constitutionally adequate healthcare during their detention. <u>Conn v. City of Reno</u>, 591 F.3d 1081, 1094 (9th Cir. 2010), <u>cert. granted, judgment vacated sub nom</u>. <u>City of Reno v. Conn</u>, 563 U.S. 915 (2011), <u>opinion reinstated</u>, 658 F.3d 897 (9th Cir. 2011). A state official's deliberate indifference to a detainee's serious medical needs deprives the detainee of his Fourteenth Amendment rights. <u>Farmer v. Brennen</u>, 511 U.S. 825, 828 (1994). A serious medical need exists where failure to provide medical treatment "could result in further significant injury or the unnecessary and wanton infliction of pain." <u>Conn</u>, 591 F.3d at 1095.

Sharkey has pleaded this claim against both the individual NaphCare doctors and nurses who treated him as well as against NaphCare itself. The standard for his claim against the individual NaphCare employees is different than the standard for the same claim against NaphCare the entity. In a deliberate indifference claim against an individual, the plaintiff must demonstrate four elements: (1) the defendant made an intentional decision with respect to the plaintiff's conditions of confinement; (2) those conditions subjected the plaintiff to a risk of

serious harm; (3) the defendant did not take reasonable measures to abate the risk even though a reasonable official would have taken such measures; and (4) by not taking those measures, defendants caused plaintiff's injuries. Gordon v. Cty. of Orange, 888 F.3d 1118, 1124–25 (9th Cir. 2018). This is an objective analysis and requires more than mere negligence. Id. at 1125. Thus, Sharkey must "prove more than negligence but less than subjective intent—something akin to reckless disregard." Castro v. Cty. of Los Angeles, 833 F.3d 1060, 1071 (9th Cir. 2016).

Sharkey has not alleged more than mere negligence against any of the individual NaphCare doctors or nurses. Sharkey does not claim that nurses failed to treat him. He merely argues that their treatment did not happen fast enough or in the way he wanted. Sharkey admits that he received consistent treatment for two weeks following the assault. Compl. at 6E ("the nap care [sic] nursing staff visited several times" for "roughly two weeks"). Sharkey complains that even though the nurses consistently treated him, they did not order further testing to assess the damage to his neck, back, and ribs. However, the constitution does not require doctors or nurses to give inmates every treatment they desire. Bowring v. Godwin, 551 F.2d 44, 47–48 (4th Cir. 1977). They must only give the care necessary to prevent significant injury or the unnecessary infliction of pain. Conn, 591 F.3d at 1095. Additionally, there is no allegation that any nurse's failure to order Sharkey's desired tests was (1) unreasonable or (2) worse than merely negligent. Sharkey's own admission that nurses provided care for two weeks after the assault belies that argument. Therefore, Sharkey's own allegations make clear that the individual NaphCare employees were not deliberately indifferent to his medical needs.

Likewise, Sharkey has not pleaded facts to support his claim that NaphCare, Inc. was deliberately indifferent to his medical needs. In a deliberate indifference claim against a municipal entity the plaintiff must demonstrate: (1) that the entity acted under the color of state law and (2) that the entity acted or failed to act according to an official policy or custom and thereby caused the plaintiff's injury. Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1139 (9th Cir. 2012). Like here, where a private entity contracts with a municipality to provide health care, the Court treats the corporation as a municipality under Monell. See Tsao, 698 F.3d at 1138–39. Importantly, the entity cannot be liable merely because it employed a tortfeasor. Monell, 436

U.S. at 692. Rather, there must be some evidence of an official policy or custom that caused the plaintiff's injury. Tsao, 698 F.3d at 1139.

Sharkey failed to allege that a NaphCare policy or custom caused his injury. To the contrary, Sharkey admits that NaphCare "responded with communication" and collected urine samples after he requested help. Compl. at 6D. The closest Sharkey comes to alleging a NaphCare policy or custom of deliberate indifference is his claim that the NaphCare nurses refused to collect his sample while it appeared to have blood in it, opting instead to wait until it "appeared normal." Id. at 6E. While that could conceivably evince some policy or procedure to avoid detecting and treating a disorder causing blood in the inmate's urine, Sharkey's later allegations foreclose that possibility. Sharkey admits that the nurses' presumed shortcomings were merely a "failure to inquire into essential facts necessary to make a professional judgement and interference with medical judgement [by] delay." Id. Admittedly, Sharkey's allegations may rise to the level of negligence or even malpractice, but they do not show a policy or practice necessary to impose liability under Monell. Therefore, Sharkey insufficiently pleaded his deliberate indifference claim against NaphCare.

Sharkey's latest proposed amendment does not fix the deficiencies in his deliberate indifference claim. The proposed amendment notifies the Court that he suffers from epilepsy and alleges additional damages, but it does not allege a plausible policy or custom that caused his injury. The very last line of the proposed amendment alleges that Sharkey was never seen by a doctor "because of NaphCare Inc. [sic] policy." Proposed Am. Compl. 6G, ECF No. 51-1. However, the mere allegation that NaphCare had a policy that governed when certain patients saw doctors does not show a constitutional violation. Still absent is any allegation that the policy itself deprived Sharkey of his right to adequate medical care. Therefore, Sharkey has not pleaded plausible facts to support his allegation that NaphCare deprived him of his constitutional right to adequate medical care under the Fourteenth Amendment. The Court grants NaphCare's motion to dismiss.

*B. Sharkey's Motion for Summary Judgment*

Next is Sharkey's pending motion for summary judgment. Sharkey filed his motion while NaphCare's motion to dismiss was pending, which caused NaphCare to move to stay the briefing schedule. The Court granted that motion and stayed briefing until it could rule on NaphCare's motion to dismiss. The remaining defendants, Officer Mariah Mendoza, Officer Blake Okolovich, Officer Jesse Neville, Officer Kenneth Kelsey, and Sheriff Lombardo ("county defendants"), joined NaphCare's motion to stay. They also responded to Sharkey's motion and asked that the Court deny the motion as premature or, alternatively, to delay decision until the parties could conduct discovery. See ECF No. 50.[2] The Court agrees that summary judgment is premature and denies Sharkey's motion. Alternatively, the Court denies Sharkey's motion because each of his claims are riddled with genuine issues of material fact.

The purpose of summary judgment is to avoid unnecessary trials by disposing of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986); Nw. Motorcycle Ass'n v. U.S. Dept. of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994). A party may seek summary judgment at any time until thirty days after the close of discovery. Fed. R. Civ. P. 56(b). However, the Court may delay its decision or deny the motion if the nonmoving party has not had the opportunity to gather facts necessary to justify its position. Fed. R. Civ. P. 56(d). Where the parties have not yet conducted discovery, the nonmoving party need not present specific reasons for its inability to present evidence to support its positions. Indeed, that party "cannot be expected to frame its motion with great specificity . . . as the ground for such specificity has not been laid." Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation, 323 F.3d 767, 774 (9th Cir. 2003).

There is no question that Sharkey's motion is premature. At the time of filing, NaphCare's motion to dismiss was pending. If granted—which the Court did above—Sharkey's summary judgment motion would be moot as it relates to his claims against NaphCare and its employees. As for the county defendants, they barely had a chance to answer Sharkey's

---

[2] To date, the parties have not conducted any discovery, and the county defendants filed their proposed discovery plan only two weeks ago. ECF No. 58.

complaint before he moved for summary judgment. Unsurprisingly, they deny Sharkey's allegations. They will surely deny Sharkey's allegations throughout discovery and at trial, which creates disputed issues of material fact on each of Sharkey's causes of action. Those factual disputes preclude summary judgment on their own. And more, Sharkey moved to amend his complaint again after filing for summary judgment, casting even more uncertainty over the facts in this case.

Given those issues, the Court cannot allow Sharkey's summary judgment motion to proceed. The question then, is whether the Court should deny Sharkey's motion outright or delay deciding the motion until the parties have engaged in further discovery. The Court finds that denial, not delay, is appropriate here. Having dismissed Sharkey's claim against NaphCare (see supra Section IIIA), any argument in his motion for summary judgment related to that claim is now moot. Further, Sharkey's continued efforts to amend his complaint necessarily change the analysis at summary judgment. Therefore, the Court elects to deny Sharkey's motion for summary judgment without prejudice rather than delay its decision.

*C. Sharkey's Motion to Assert Jurisdiction*

Next, Sharkey seeks to "assert jurisdiction" over Clark County and the Las Vegas Metropolitan Police Department ("Metro") under 42 U.S.C. § 12101, 29 U.S.C. § 794, and 42 U.S.C. § 41705. Each of those statutory provisions defines or otherwise prohibits discrimination on the basis of disability in the public sphere. Sharkey claims he suffers from epilepsy and seems to allege that the County and police department withheld medical attention because of his disability.

It is unclear exactly what Sharkey's motion is requesting. From what the Court can gather, Sharkey is alleging that these defendants violated the Americans with Disabilities Act by denying him medical services based on his disability. However, Sharkey's complaint does not allege that any defendant was aware of his epilepsy or that their knowledge of his condition affected his care. To the contrary, Sharkey's motion to assert jurisdiction conflicts with his admission that he received care while incarcerated, but that the care was inadequate. Compare Mot. to Assert Jur. 2–3, ECF No. 20, with Compl. at 6D. Therefore, inasmuch as Sharkey

attempts to add a discrimination claim against these defendants under the Americans with Disabilities Act or other disability-discrimination provision, the Court denies his motion.

### D. Sharkey's Motion to Consolidate

Next, Sharkey essentially asks the Court to order NaphCare to rescind its motion to dismiss and consolidate it into an opposition to Sharkey's motion for summary judgment. He claims that consolidation would save time because it would allow the Court to decide the merits of both motions at once. Setting aside the procedural implications that would accompany such an order, the Court need not decide the issue because it is moot. The Court has granted NaphCare's motion to dismiss (see supra Section IIIA) and has denied Sharkey's motion for summary judgment (see supra Section IIIB). Accordingly, there is no reason to consolidate these filings, and Sharkey's motion is denied as moot.

### E. Sharkey's Motion to Join Defendants

Next, Sharkey moves to join several defendants under Rule 19(a)(2). Rule 19 allows the Court, under certain circumstances, to compel joinder of parties who have refused to join a case. However, each defendant that Sharkey wishes to join are either already defendants (see Compl. at 1A) or were dismissed in the Court's initial screening order. See ECF No. 17. Because Sharkey has not cured the deficiencies that caused the Court to dismiss those parties in its screening order, there is no reason to compel joinder under Rule 19. Therefore, Sharkey's motion to join defendants is denied.

### F. Sharkey's Motion to Amend

Sharkey's motion to amend fails for substantially the same reason as his motion to join defendants; the amendment seeks to add parties the Court has already dismissed without curing the reason they were dismissed in the first place. Sharkey's first complaint alleged eleven causes of action against both NaphCare and county defendants. The Court screened that complaint and dismissed all but two of two of Sharkey's claims. Screening Order, ECF No. 9. Sharkey amended his complaint, and the Court allowed Sharkey to proceed on five claims: (1) a Fourteenth Amendment claim against Officer Neville for failure to protect and excessive force; (2) a Fourteenth Amendment claim against Officer Kelsey, Sheriff Lombardo, and Doe

defendants for excessive force and failure to protect; (3) a First Amendment free exercise claim against Sheriff Lombardo and Doe Officials; (4) a Fourteenth Amendment conditions-of-confinement claim against Officer Okolovich, Sheriff Lombardo, and Doe Officials; and (5) a Fourteenth Amendment deliberate indifference to medical needs claim against NaphCare and Doe nurses and doctors. The Court dismissed defendants Clark County and the Las Vegas Metropolitan Police Department without prejudice, and Sharkey's second complaint became the operative complaint in this case.

Sharkey now seeks to restore the state of Nevada and Metro as defendants and to claim damages under the Americans with Disabilities Act. A party may amend its complaint once as a matter of course within 21 days of serving it on the opposing party. Fed. R. Civ. P. 15(a)(1). Once a party has exhausted its amendment as a matter of course, he may not further amend his complaint without consent of the opposing party or leave of the Court. Fed. R. Civ. P. 15(a)(2). Generally, leave to amend is freely given, but the Court may deny amendment if it would unnecessarily delay the case, would cause undue prejudice, would fail to cure the deficiencies of the prior complaint, or would be futile. Foman v. Davis, 371 U.S. 178, 182 (1962). A proposed amendment is futile if "no set of facts can be proved under the amendment." Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988).

The minor changes Sharkey made to his proposed amended complaint do not cure the deficiencies in his original complaint, and even if they did, amendment would be futile. The proposed amendment attempts to revive Sharkey's failure to investigate claim against internal affairs officers that the Court already dismissed with prejudice. Sharkey also attempts to rope Metro back into his complaint, but the Court already dismissed Metro because Sharkey did not allege a specific policy or procedure that it instituted at CCDC. Sharkey's proposed amendment fares no better than his original complaint. Sharkey still fails to identify any policy or custom that Metro instituted at CCDC that violated his constitutional rights. Additionally, granting Sharkey's current motion to amend would cause undue delay. Having granted NaphCare's motion to dismiss, the Court presumes that Sharkey will attempt to again amend his complaint. The Court need not grant this motion to amend, knowing that another will likely follow. In sum,

Sharkey does not qualify for amendment as a matter of course, and his proposed amendment does not cure the deficiencies of his original complaint. Therefore, the Court denies his motion to amend.

*G. Sharkey's Motion to Extend Copy Limit*

Finally, Sharkey requests an increase to his photocopy budget. Indigent parties do not have a constitutional right to free and unlimited photocopying. Johnson v. Moore, 948 F.2d 517, 521 (9th Cir. 1991) (citing Sands v. Lewis, 886 F.2d 1166, 1169 (9th Cir. 1989). However, a due process right to photocopying arises "when, and only when, necessary to guarantee him meaningful access to the courts." Hiser v. Franklin, 94 F.3d 1287, 1294 n.6 (9th Cir. 1996). A denial of photocopying privileges does not necessarily equate to a denial of meaningful access to the Court. Johnson, 948 F.2d at 521. In this district, the Court will order a prison to provide additional copy resources "when it is necessary for an inmate to provide copies to the court and other parties." Allen v. Clark Cty. Det. Ctr., No. 2:10-cv-0857-RLH-GWF, 2011 WL886343 at *2 (D. Nev. Mar. 11, 2011).

Sharkey has already exceeded his $100 copy-work limit, and this case is just beginning. In the coming months, Sharkey will presumably seek to amend his complaint once again, and he will likely file another motion for summary judgment after the parties have conducted discovery. Those two filings alone will require him to submit copies of filings to the Court and to the opposing parties. Therefore, Sharkey has shown that an increase in copy-work funds is necessary to allow continued access to the Court, and the Court grants his request for additional photocopy allowance.

However, the Court notes that much of Sharkey's printing to this point has been unnecessary. He seems to have wasted much of his $100 budget needlessly copying documents and submitting them multiple times. See ECF Nos. 13, 20, 43, 51 (all motions attempting to amend his prior pleadings). Sharkey is advised to use his additional copy-work budget sparingly and to allow opposing parties to respond to his motions before refiling or otherwise supplementing them.

**IV. Conclusion**

Accordingly, IT IS HEREBY ORDERED that Defendant NaphCare, Inc.'s Motion to Dismiss (ECF No. 23) is **GRANTED**. The Court dismisses Sharkey's fifth cause of action and dismisses Defendant NaphCare, Inc and the individual Doe nurses and doctors. If he chooses, Sharkey may amend his complaint to address the deficiencies of his claim against NaphCare, Inc. and its employees only within thirty days of entry of this order.

IT IS FURTHER ORDERED that Sharkey's Motion for Summary Judgment (ECF No. 36) is **DENIED** without prejudice as premature;

IT IS FURTHER ORDERED that Sharkey's Motion to Assert Jurisdiction (ECF No. 20) is **DENIED**;

IT IS FURTHER ORDERED that Sharkey's Motion to Consolidate (ECF No. 42) is **DENIED AS MOOT**;

IT IS FURTHER ORDERED that Sharkey's Motion to Join Defendants under FRCP 19(a)(2) (ECF No. 43) is **DENIED**;

IT IS FURTHER ORDERED that Sharkey's Motion for Leave to Amend his Complaint (ECF No. 51) is **DENIED**;

IT IS FURTHER ORDERED that Sharkey's Motion to Extend Copy Limit (ECF No. 35) is **GRANTED**. The Nevada Department of Corrections shall increase Sharkey's copy-work limit so that he is allotted an additional $10 worth of copy-work.

Dated this 8th day of November, 2019.

_____
Kent J. Dawson
United States District Judge